# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **ANGELA D. BAUGUS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10CV00003 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Jason A. Mullins and Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Patricia A. Stewart, Assistant Regional Counsel, Eric P. Kressman, Regional Chief Counsel, Region III, and Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I vacate the final decision of the Commissioner of Social Security (the "Commissioner") and remand for further proceedings consistent with this Opinion.

I

The plaintiff, Angela D. Baugus, filed this action challenging the Commissioner's decision to deny her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act

("Act"), 42 U.S.C.A. §§ 401-34, 1381-83f (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g), 1383(c)(3).

Baugus protectively filed a claim for benefits on June 26, 2006, alleging that her disability began August 1, 2005. Her claim was denied initially and upon reconsideration. On June 4, 2008, an administrative law judge ("ALJ") held a hearing at Baugus's request at which both Baugus, represented by counsel, and a vocational expert ("VE") testified. The ALJ rejected Baugus's claim on July 25, 2008. The Commissioner's decision became final when the Social Security Administration's Appeals Council denied Baugus's request for review on November 16, 2009. Thereafter, Baugus filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross-motions for summary judgment and have fully briefed and orally argued the issues. The case is now ripe for decision.

Baugus was twenty-nine years old at the time of the ALJ's decision, a younger person under the regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c) (2010). Baugus has a high school diploma. (R. at 17.) Before the alleged onset of her disability, Baugus worked as a convenience store cashier, short order cook, and fast-food worker. (*Id.*)

Baugus claims she is no longer able to work because of a combination of impairments including bipolar disorder, attention deficit hyperactivity disorder, anxiety disorder, seizure disorder, and low back pain. She provided medical records to the ALJ to substantiate her claim. After reviewing the evidence, the ALJ found that Baugus suffered from several severe impairments. The ALJ determined that none of these impairments, either alone or in combination, qualified as any of the agency's listed disabilities.

The ALJ concluded that Baugus had the residual functional capacity to perform medium-exertion work that requires only occasional stooping, balancing, kneeling, crouching, crawling, and climbing of ramps and stairs but avoids climbing of ladders, ropes, or scaffolds, moderate exposure to hazards, such as heights and hazardous machinery, and high stress situations. The ALJ limited Baugus to jobs that require her to understand, remember, carry out, and maintain attention and concentration of only short and simple instructions.

The ALJ concluded that, although Baugus could not complete the full scope of medium-exertion work, she could perform the full range of unskilled, light-exertion work. Baugus's previous jobs as a fast-food worker and a convenience store cashier were, according to the VE, light, unskilled positions as generally performed in the national economy, and the ALJ found that Baugus, with her limitations, could

still perform them. Therefore, the ALJ concluded that Baugus was not disabled. Alternatively, the ALJ determined that Baugus was not disabled because based on Baugus's age, education, vocational profile and her residual functional capacity, Baugus fell under Rules 201.27, 202.20, and 203.28 in the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (2010) (denoting a younger individual, possessing a high school level education or more and either unskilled or no work experience).

Baugus argues the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I agree.

II

The plaintiff bears the burden of proving that she is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *See id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920 (2010); *see also Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985). If the claimant can perform work that exists in significant numbers in the national economy, then she does not have a disability. *See* 20 C.F.R. §§ 404.1566(b); 416.966(b) (2010).

This court must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

A

Baugus first claims that the ALJ erred by failing to list Baugus's severe impairments in his decision. I disagree. In the conclusion of the decision, the ALJ listed his findings, stating in regard to severe impairments, "The claimant has medically determinable severe impairments as set forth in the body of this decision." (R. at 28.) Baugus is correct that the ALJ did not elsewhere in the opinion explicitly list Baugus's severe impairments. Such a list certainly would have increased the clarity of the ALJ's decision and is, in general, highly recommended. In this case, however, the text and context of the ALJ's decision was clear enough that it was readily apparent which of Baugus's impairments the ALJ determined to be severe.

In regard to physical impairments, the Commissioner claims the ALJ found no severe physical impairments (Def.'s Br. 12), but this assertion is incorrect.[1] The ALJ stated that the state agency physician's "assessment suggests a physical impairment that more than minimally interferes with work related activity. The [ALJ] therefore finds the claimant has a severe physical impairment and that the functional assessment by the non-examining State Agency physician . . . accurately reflects [Baugus's] physical functioning." (R. at 19 (emphasis omitted).) Because the state agency physician found only one medically determinable physical impairment, a seizure disorder, the only conclusion to draw is that the ALJ found that Baugus's seizure disorder was a severe impairment. (*See* R. at 266.) Therefore, I find that it is adequately apparent from the record that the ALJ found Baugus suffered from the severe physical impairment of a seizure disorder.

The ALJ's conclusion as to the severity of Baugus's mental impairments, though obliquely worded, is also fairly understood from the text of the decision. To evaluate the severity of mental disorders, the ALJ must rate the degree of limitation resulting from the claimant's impairments in four broad functional areas: activities

---

[1] The Commissioner's misinterpretation of the ALJ's decision is proof that the clarity of a decision is impeded when the ALJ, as here, fails to plainly list somewhere in the decision the impairments found to be severe.

of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d) (2010). If any of the first three functional areas are more than mildly limited by an impairment or there is at least one episode of decompensation of extended duration, then the impairment is severe. *See id.*

The ALJ here found that Baugus suffered from the three medically determinable impairments of affective disorder, anxiety related disorder, and personality disorder. (*See* R. at 20-22 ("Her condition thus meets the preliminary, paragraph 'A' criteria of section 12.04 [affective disorder]"; "The record therefore establishes the preliminary diagnostic criteria under section 12.06 [anxiety related disorder]"; "The preliminary diagnostic criteria [of section 12.08 personality disorder] are: A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following . . . 4. Persistent disturbances of mood or affect . . . . The claimant has reported, and been treated, for mood swings, and was diagnosed in July 2006 with adjustment disorder with depressed mood, although a specific diagnosis of personality disorder has not been made.") (emphasis omitted).) The ALJ then determined the extent of Baugus's limitations in the four broad functional areas caused by these mental impairments. (*See* R. at 22-24.) He concluded that together, the mental impairments caused mild to moderate restrictions in Baugus's ability to

perform activities of daily living; moderate restrictions in Baugus's ability to maintain social functioning; and moderate restrictions in her ability to sustain concentration, persistence, or pace. (*See* R. at 23-24.) Also, Baugus had one mental health hospitalization in July 2006. (*See* R. at 24.) Accordingly, the ALJ found that the functional limitations qualified Baugus as having "a 'severe' mental impairment" but not one that "me[t] or equal[ed] the criteria necessary for a finding of presumptive disability." (*Id.*)

Although, contrary to the Commissioner's contention, the ALJ's decision does not expressly list which of Baugus's mental impairments the ALJ deemed severe, it is sufficiently clear that the ALJ found the three mental impairments of affective disorder, anxiety related disorder, and personality disorder severe because the ALJ evaluated the criteria for presumptive disability for each of these impairments, (*See* R. at 22-25 ("In order to satisfy the criteria for presumptive disability under sections 12.04 [affective disorder], 12.06 [anxiety related disorder], or 12.08 [personality disorder] . . . the claimant's condition must result in . . .")), which is the step an ALJ must take only after first determining that the impairments are severe. *See* 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2) (2010) ("If your mental impairment(s) is severe, we will then determine if it meets or is equivalent in severity to a listed mental disorder.").

The ALJ's failure to list Baugus's severe impairments in his decision is, therefore, distinct from the ALJ's decision in the case Baugus cites, *Haines v. Apfel*, 986 F. Supp. 1212 (S.D. Iowa 1997). In that case, the court ruled that it was an error for the ALJ to fail to list which of the claimant's impairments were severe because it prohibited the court from providing a meaningful review. *Id.* at 1214. However, the reason the court was prevented from properly reviewing the case was that "[f]rom th[e] record, it [wa]s not possible to know whether or not the ALJ considered [the claimant's impairments, fibromyalgia and depression,] to be severe," and if the ALJ did not find them severe, the court stated, "[the ALJ] should have sent Plaintiff to the appropriate specialists for evaluations." *Id.* Here, as demonstrated above, using the record and the text of the decision, without much effort, it was possible to know which impairments the ALJ deemed severe. The ALJ discussed at length in his decision his evaluation of the symptoms and impairments Baugus alleged and the many medical records submitted to substantiate them. Unlike *Haines*, the record in this case was fully developed to make conclusions regarding the alleged impairments. Also, unlike the court in *Haines*, the ALJ sent Baugus to a consultative psychological exam before reaching his conclusion.

Accordingly, although it is preferable that the ALJ's explicitly list the claimant's severe impairments, in this case it was readily apparent which of Baugus's

impairments the ALJ determined to be severe, thus allowing the court to meaningfully review the ALJ's decision.

B

Baugus also contends that the ALJ erroneously determined Baugus's residual functional capacity. Specifically, Baugus claims that the assessments completed by psychiatrist Uzma Ehtesham, M.D.; state agency medical consultant Louis Perrott, Ph.D.; and psychological consultant Donna Abbott, M.A., show that Baugus is unable to perform work at any level of exertion. I find that substantial evidence supports the weight the ALJ accorded these experts' opinions, but substantial evidence does not support the residual functional capacity that the ALJ ultimately outlined as a result of his findings.

Dr. Ehtesham treated Baugus from May 2005 to June 2006. On June 15, 2006, Dr. Ehtesham indicated on a medical evaluation form that Baugus was unable to work due to her bipolar and generalized anxiety disorders. On April 11, 2008, Dr. Ehtesham filled out an assessment evaluating Baugus's mental ability to do work-related activities. In this assessment, Dr. Ehtesham opined that Baugus had no useful ability to interact appropriately with supervisors or coworkers or to respond appropriately to usual work situations and changes in a routine work setting. (R. at 414.) The ALJ rejected Dr. Ehtesham's assessment because neither Dr. Ehtesham's

progress notes nor other mental health records corroborated her findings. I find substantial evidence supports this conclusion. (R. at 25.) Even the experts Baugus cites disagreed with Dr. Ehtesham's assessment.

Abbott, a psychological consultant who examined Baugus, found that Baugus was only moderately limited in her ability to interact appropriately with supervisors and coworkers and was markedly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 387.) While the ALJ did conclude that Baugus was moderately limited in her ability to interact with others at work, the ALJ did not accept Abbott's conclusion that Baugus was markedly limited in her ability to respond appropriately to usual work situations and changes in a routine setting because it went against the totality of the evidence. The ALJ's conclusion is supported by substantial evidence, because while Abbott relied on Baugus's own report of the severity of symptoms in evaluating Baugus, a psychological test Abbott administered indicated Baugus was exaggerating her symptoms and the severity of her impairments. (*See* R. at 384-85.) Also, Abbott contradicted her own finding of marked limitation in changes to routine setting by remarking that Baugus's "[g]eneral adaption skills show *moderate* limitation." (R. at 384 (emphasis added); *cf* 386-87.)

Non-examining consultant Dr. Perrott, like Abbott, found that Baugus was moderately limited in some aspects of her abilities to maintain sustained concentration and persistence, to interact socially, and to adapt. (R. at 267-68.) In contrast to Dr. Ehtesham, Dr. Perrott felt that Baugus was only moderately limited in her ability to respond appropriately to criticism from supervisors or changes in the work setting and to get along with coworkers. (R. at 268.) Dr. Perrott evaluated Dr. Ehtesham's treatment records and 2006 evaluation, but found that "Dr. E[h]tesham over-generalizes the impact of [Baugus's] mental impairments on her levels of functioning, especially her work-related limitations." (R. at 269.) Thus, despite Baugus's contention to the contrary, the ALJ in fact accepted Dr. Perrott's findings by concluding that Baugus was moderately limited in her abilities to function socially and to sustain concentration, persistence, or pace.

The problem with the ALJ's decision, however, is that he did not account for the limitations he determined Baugus had in social functioning when he outlined Baugus's residual functional capacity. The ALJ appropriately accounted for Baugus's moderately restricted ability to sustain concentration, persistence, or pace, by inserting in her residual functional capacity that Baugus be limited to jobs that require she understand and carry out only short and simple instructions. However, the ALJ seemingly abandoned any of Baugus's social limitations in the residual

functional capacity, in which he stated, "Although limited in her ability to maintain socialization, [Baugus] retains the ability to work in coordination with or in proximity to others without being distracted by them, . . . [to] interact appropriately with the general public, and [to] get along with co-workers or peers without distracting them or exhibiting behavioral extremes." (R. at 30.) The ALJ adds only one minimal caveat, that Baugus "should avoid high stress work situations, [but] she nevertheless retains the ability to deal with changes in routine work settings and making routine work related decisions." (*Id.*)

These restrictions are meaningless, because they do not list any social functioning duties that should be avoided. Moreover, they do not accurately reflect the moderate limitations of social functioning found by the state agency psychological consultants and purportedly accepted by the ALJ when he found that Baugus's "mental impairments result in moderate restrictions in her ability to maintain social functioning." (R. at 24 (emphasis omitted).) For example, the state agency psychologists found that Baugus had moderate limitations in her ability to interact with the general public or coworkers or to respond to criticism or changes in the work setting, but these limitations are not captured in Baugus's residual functional capacity.

Consequently, I find that the ALJ's determination of Baugus's residual functional capacity is not supported by substantial evidence, and I will remand this case pursuant to 42 U.S.C.A. § 1383(c)(3) and sentence four of 42 U.S.C.A. § 405(g) and for further proceedings.

C

Finally, Baugus argues that the ALJ erred in step five of the evaluation of Baugus's disability claim by improperly determining that Baugus was not disabled under the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (2010), even though Baugus suffered from severe nonexertional impairments. Because I find that the ALJ erred in determining the residual functional capacity, step three in the sequential evaluation of disability, the ALJ must also revisit steps four and five on remand. Therefore, there is no need to determine the merits of this argument.

III

For the foregoing reasons, both parties' motions for summary judgment will be denied, and the final decision of the Commissioner will be vacated and the case remanded for further proceedings consistent with this Opinion. An appropriate final judgment will be entered.

DATED: September 21, 2010

　/S/ JAMES P. JONES
United States District Judge